UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TERRELL BOSTICK,                  )
                                        )
      Plaintiff             )
                                          )
         v.                )
                                        )  Civil Action No. 3:15-cv-30193-MGM
                                        )
SMITH & WESSON CORP.,         )
                                        )
      Defendant           )

REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
(Dkt. No. 39)

ROBERTSON, U.S.M.J.

I.    INTRODUCTION

Plaintiff Terrell Bostick ("Plaintiff") was employed as a member of the firearms assembly team at Defendant Smith and Wesson Corporation ("Defendant") on March 17, 2014 when he abruptly left the job and handed his badge to a security guard. The next day, Defendant agreed to place Plaintiff on unpaid leave pending receipt of medical documentation. Plaintiff's failure to provide the records necessary to extend his leave past April 15, 2014 notwithstanding Defendant's repeated requests for documentation, caused Defendant to determine that Plaintiff voluntarily resigned on May 28, 2014. Plaintiff alleges that, by terminating his employment, Defendants violated the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and its Massachusetts analog, Mass. Gen. Laws ch. 151B ("Chapter 151B"). Defendant disputes Plaintiff's contentions on procedural and substantive grounds.

Defendant's motion for summary judgment has been referred to this court for a report and recommendation. *See* 28 U.S.C. §636(b)(1)(b); Fed. R. Civ. P. 72. By its motion, Defendant contends that it is entitled to judgment as a matter of law on all counts. Plaintiff has not filed an

opposition, and the time for him to do so has elapsed. For the reasons detailed below, this court finds that Plaintiff has failed to present sufficient facts to create a trial-worthy issue, and, therefore, recommends that Defendant's motion for summary judgment be ALLOWED.

II. FACTUAL BACKGROUND[1]

Defendant is a Springfield, Massachusetts-based manufacturer and designer of firearms for the consumer, law enforcement, and military markets (Dkt. No. 41 ¶ 1). Defendant's Springfield facility employed approximately 1,500 workers in January 2017 (*id.*).

In August 2012, Plaintiff began working for Defendant as a temporary employee through the United Personnel employment agency (*id.* ¶ 2). Defendant hired Plaintiff as a regular, full-time employee on November 4, 2013 (*id.* ¶ 3). As a member of the third shift assembly team who constructed firearms, Plaintiff was required to concentrate and to work quickly and efficiently (Dkt. No. 41 ¶ 3; Dkt. No. 43-1 at 8, 12).

At approximately 3:50 A.M. on February 14, 2014, William Burgen, the first shift team leader, saw Plaintiff walking in the middle of the road near Defendant's facility (Dkt. No. 41 ¶ 4). Plaintiff returned to work at approximately 5:30 A.M. carrying a bag containing personal items, including clippers, deodorant, cologne, condoms, a shirt, and shoes (*id.* ¶ 5). Although Plaintiff was not accused of stealing when he returned to work, he stated, "I am not a thief" (*id.* ¶ 6). Shortly thereafter, Plaintiff told Burgen that "he was not feeling like himself" and was "not in [his] right mind" (Dkt. No. 41 ¶ 7; Dkt. No. 43-1 at 20). Burgen sent him home (*id.*). When

---

[1] The undisputed material facts are derived from Defendant's "Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment" (Dkt. No. 41) and supporting affidavits, depositions, and other documentation, and are cited herein as "Dkt. No. 41 ¶ __."

Plaintiff arrived at home, he told his father, Larry Bostick,[2] that he was upset about his grandmother's death, was not sleeping, and needed to talk to someone (Dkt. No. 43-1 at 23-24). Larry transported Plaintiff to the Mercy Medical Center ("Mercy") for treatment (Dkt. No. 41 ¶ 8). Plaintiff worked his shift the next day and informed his team leader, Edgar Gonzalez, that he had visited Mercy (Dkt. No. 41 ¶ 9; Dkt. No. 43-1 at 13, 26).

Plaintiff was expected to pack about forty firearms into boxes per hour, but was only packing about twenty per hour on March 17, 2014 (Dkt. No. 43-1 at 28-29). Gonzalez spoke to him about his slow pace (Dkt. No. 41 ¶ 10; Dkt. No. 43-1 at 29). In response, Plaintiff told Gonzalez that he was not feeling well, then said, "Edgar, I'm out of here. I'm gone" (Dkt. No. 41 ¶ 11). He left his badge with a security guard and told him, "Hey, I'm gone" (*id.* ¶ 12). Larry took Plaintiff to the Mercy again for treatment (*id.* ¶ 14). Plaintiff told a Mercy staff member that he had just quit his job (Dkt. No. 41 ¶ 15; Dkt. No. 43-1 at 32).

On March 17, 2014, Larry informed Kristen Capannola of Defendant's Human Resources ("HR") department that Plaintiff was hospitalized and had not intended to terminate his employment (Dkt. No. 41 ¶¶ 17, 18). Capannola indicated that Plaintiff would be placed on short term disability leave contingent on Plaintiff supplying medical documentation (*id.* ¶ 18). Defendant sent Larry a short term disability application shortly thereafter (*id.* ¶ 19).

The next day, Defendant submitted a short term disability claim form to UNUM, Defendant's third-party administrator, on Plaintiff's behalf (Dkt. No. 41 ¶ 20; Dkt. No. 42-2 at 2-3). On March 20, 2014, UNUM sent Plaintiff a letter advising him that they received his short term disability claim, and requesting additional information for their review of his application

---

[2] Because Plaintiff and his father share the same surname, Plaintiff's father, Larry Bostick, will be referenced herein as "Larry" to avoid confusion.

(Dkt. No. 41 ¶ 21; Dkt. No. 43-3 at 2). UNUM indicated that they needed Plaintiff's information by April 10, 2014 (Dkt. No. 43-3 at 2). Plaintiff received a second letter from UNUM dated March 27, 2014 stating that they had not heard from him and itemizing the additional material that they required to process his claim for short term disability benefits, including an "Attending Physician's Statement" and authorizations for release of information (Dkt. No. 41 ¶ 22; Dkt. No. 43-4 at 2). UNUM's April 3, 2014 letter repeated the request for the "Attending Physician's Statement" and releases and indicated that if they did not receive the requested information by April 23, 2014, they would make a benefits decision based on the information they had received (Dkt. No. 41 ¶¶ 23, 24; Dkt. No. 43-5 at 2). By an April 23, 2014 letter, UNUM advised Plaintiff that they were closing his claim because he had not submitted the requisite information, but he could re-open his case by submitting the "Attending Physician's Statement" (Dkt. No. 41 ¶ 25; Dkt. No. 43-6).

On May 6, 2014, Capannola sent Plaintiff a letter indicating that he had failed to deliver any documentation to UNUM substantiating his claim for short term disability benefits, had not returned to work, and had not "called to explain [his] continued absence" (Dkt. No. 41 ¶¶ 26, 27; Dkt. No. 42-3 at 2). Capannola's letter advised Plaintiff that Defendant considered him to have resigned as of the letter's date, May 6, 2014 (Dkt. No. 41 ¶ 27; Dkt. No. 42-3 at 2). Plaintiff contacted Capannola about two days later and told her that he would submit the required documentation to UNUM that day (Dkt. No. 41 ¶ 28; Dkt. No. 42-4 at 2). Based on Plaintiff's representation, Defendant agreed to rescind Plaintiff's termination and temporarily continue his leave of absence (Dkt. No. 41 ¶ 28). By letter of May 12, 2014, Capannola documented Plaintiff's May 8 representation that he would submit the forms to UNUM that day, and indicated UNUM had not yet received his information (Dkt. No. 42-4 at 2). According to the letter,

Plaintiff's employment would be terminated on May 16, 2014 if he failed to supply the requisite documentation to UNUM by that date (Dkt. No. 41 ¶ 29; Dkt. No. 42-4 at 2).

On May 13, 2014, Plaintiff contacted UNUM during a session with his treating therapist who thereafter provided medical documentation to UNUM to support Plaintiff's short term disability claim (Dkt. No. 41 ¶¶ 30, 31). UNUM sent a letter to Plaintiff on May 17, 2014 indicating that, under the terms of Defendant's policy, Plaintiff's benefits began on April 5, 2014 and were approved through April 15, 2014 "[b]ased on the normal recovery time frame" (Dkt. No. 41 ¶ 32; Dkt. No. 43-7 at 2). The letter further stated that if Plaintiff's medical condition prevented him from returning to work on April 16, 2014, UNUM needed paperwork from his treatment providers in order to determine whether he was entitled to additional benefits from April 16 through May 17, 2014 (Dkt. No. 41 ¶ 33; Dkt. No. 43-7 at 2-3). Plaintiff understood that he needed to submit additional medical documentation to UNUM in order to extend his leave and benefits to May 17, 2014 (Dkt. No. 41 ¶ 34).

By Capannola's May 22, 2014 letter, Defendant advised Plaintiff that he had not complied with UNUM's request for the necessary information to continue his short term disability benefits beyond April 15, 2014 (Dkt. No. 41 ¶¶ 35, 36; Dkt. No. 42-5 at 2). Plaintiff appreciated that if he failed to submit the requisite paperwork to UNUM by May 28, 2014, Defendant would consider him to have resigned voluntarily on that date (Dkt. No. 41 ¶¶ 36, 37; Dkt. No. 42-5 at 2). However, Plaintiff did not provide additional medical documentation to substantiate his leave of absence beyond April 15, 2014 (Dkt. No. 41 ¶ 38). On May 30, 2014, Capannola sent Plaintiff a letter notifying him that Defendant deemed him to have voluntarily resigned from his employment on May 28, 2014 based on his failure to submit medical documentation to support his continued absence (Dkt. No. 41 ¶ 39; Dkt. No. 42-6 at 2).

Plaintiff's treatment provider notified Defendant that Plaintiff was not capable of returning to work until August 2014, at the earliest (Dkt. No. 41 ¶ 40; Dkt. No. 43-1 at 4-5; Dkt. No. 43-8 at 4 ¶ 7; Dkt. No. 43-9 at 5 ¶ 8).

On June 11, 2014, Plaintiff filed a charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC") alleging violations of Chapter 151B and the ADA respectively (Dkt. No. 41 ¶ 41). The MCAD dismissed Plaintiff's petition on September 30, 2014 based on a lack of probable cause (*id.* ¶ 42). On April 3, 2015, the EEOC issued a Dismissal and Notice of Rights indicating that a lawsuit in federal or state court based on an ADA violation "must be filed WITHIN 90 DAYS of . . . receipt of this notice; or your right to sue based on this charge will be lost" (Dkt. No. 41 ¶ 44; Dkt. No. 43-11 at 2) (emphasis original). Plaintiff initiated his lawsuit in the Hampden Superior Court on September 28, 2015.[3]

III.    DISCUSSION

A.    Summary Judgment Standard of Review

Summary judgment is appropriate when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[3] Defendant's "Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment" indicates that Plaintiff's suit was filed in the state court "on or about October 2, 2015" (Dkt. No. 41 ¶ 45). However, the Hampden Superior Court docket for Bostick v. Smith and Wesson Corp., 1579CV00674, indicates that the complaint was filed on September 28, 2015. *See United States v. Florentino,* 385 F.3d 60, 65 (1st Cir. 2004), *vacated on other grounds,* 544 U.S. 1058 (2005) (courts are "entitled to take notice of the records of relevant court proceedings"). Absent contrary evidence, court dockets are presumed to be correct. *See MacNeil v. State Realty Co. of Bos., Inc.,* 229 F.2d 358, 359 (1st Cir. 1956). In any event, the variance between the date on the docket and Defendant's stated date is inconsequential to the issues raised.

matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "A factual dispute is 'genuine' if it may reasonably be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Pagan–Colon v. Walgreens De San Patricio, Inc.*, Civil No. 08-2398 (GAG), 2010 WL 1849907, at *1 (D.P.R. May 6, 2010), *on reconsideration in part*, Civil No. 08-2398 (GAG), 2010 WL 2267377 (D.P.R. June 3, 2010) (citing *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)). "The moving party has the initial burden of showing there is no genuine issue as to any material fact." *Id.* (citing *Celotex*, 477 U.S. at 325). "This burden may also be discharged by showing there is insufficient evidence to support the nonmoving party's case." *Id.*

If the moving party meets its burden, then the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment." *Pagan–Colon*, 2010 WL 1849907, at *1. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). "When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party the benefit of any and all reasonable inferences." *Pagan–Colon*, 2010 WL 1849907, at *1 (citing *Anderson*, 477 U.S. at 255). "Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence." *Id.*

"Although Defendant's motion is unopposed, the court still must determine, on the record before it, whether Defendant is entitled to summary judgment." *Gedeon v. N. Constr. Servs., L.L.C.*, Civil Action No. 15-cv-30038-KAR, 2016 WL 6832620, at *3 (D. Mass. Nov. 18, 2016). *See Cordi–Allen v. Halloran*, 470 F.3d 25, 28 (1st Cir. 2006) (citing Fed. R. Civ. P. 56(e)

(instructing that if the adverse party fails to respond, "summary judgment, if appropriate, shall be entered"); *Stonkus v City of Brockton Sch. Dep't*, 322 F.3d 97, 102 (1st Cir. 2003)). "[E]ven an unopposed motion for summary judgment should not be granted unless the record discloses that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Rivera–Torres v. Rey–Hernández*, 502 F.3d 7, 13 (1st Cir. 2007) (citing *Vélez v. Awning Windows, Inc.*, 375 F.3d 35, 42 (1st Cir. 2004); *Mendez v. Banco Popular de P.R.*, 900 F.2d 4, 7-8 (1st Cir. 1990)). "In most cases, however, 'a party's failure to oppose summary judgment is fatal to its case.'" *Ferreira v. Mortg. Elec. Registration Sys., Inc.*, 794 F. Supp. 2d 297, 301 (D. Mass. 2011) (quoting *Pérez–Cordero v. Wal–Mart P.R.*, 440 F.3d 531, 533–34 (1st Cir. 2006)).

### B.     Claimed FMLA Violation (Count I)

Plaintiff alleges that, after his leave of absence, he was denied his FMLA rights to be restored to either his prior position or a substantially equivalent one (Dkt. No. 1-1 at ¶ 12). Defendant contends that Plaintiff was not entitled to any rights under the FMLA because he was not medically able to return to work after the expiration of the twelve week leave period covered by the Act (Dkt. No. 40 at 14-16). Defendant's argument is correct as a matter of law.

The FMLA of 1993 was enacted "to balance the demands of the workplace with the needs of families." 29 U.S.C. § 2601(b)(1). It enables an "eligible employee" to take up to twelve weeks of unpaid leave in one year for "a serious health condition that makes the employee unable to perform the functions" of his position. 29 U.S.C. § 2612(a)(1)(D), (c).[4]

---

[4] "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves [either] . . . inpatient care in a hospital, hospice, or residential medical care facility; or . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Defendant does not dispute that Plaintiff suffered from a "serious health condition." *Id.*

"[O]n return from such leave," eligible employees are entitled "(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment."  29 U.S.C. § 2614(a)(1).

> The First Circuit recognizes two distinct theories of recovery under the FMLA: (1) the interference theory arising under 29 U.S.C. § 2615(a)(1), which prohibits an employer from "interfer[ing] with, restrain[ing], or deny [ing]" an employee's exercise, or attempt to exercise, a right provided by the statute; and (2) the retaliation theory arising under 29 U.S.C. § 2615(a)(2), which protects the employee from discrimination for exercising the statutory rights.

*Boadi v. Ctr. for Human Dev.,* Case No. 3:14-cv-30162-KAR, 2017 WL 886972, at *7 (D. Mass. Mar. 6, 2017).  *See Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998).  *Accord Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 330 (1st Cir. 2005).  Plaintiff's claim is based on Defendant's alleged interference with his FMLA right to reinstatement in his prior position or a substantially equivalent one when he returned from his FMLA leave.  *See Hodgens*, 144 F.3d at 159.

The employee's ability to return to work after the expiration of the twelve weeks of FMLA leave is a prerequisite to his right to reinstatement under the Act.  *See Colburn*, 429 F.3d at 332; *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.,* 155 F.3d 775, 784–85 (6th Cir. 1998) (termination of employee did not violate FMLA where employee was unable to return to work after the twelve week leave period); *Bellone v. Southwick-Tolland Reg'l Sch. Dist.*, 915 F. Supp. 2d 187, 196 (D. Mass. 2013), *aff'd*, 748 F.3d 418 (1st Cir. 2014) ("[A]n employee is not entitled to reinstatement under the FMLA if he or she is unable to return to work until after the expiration of the FMLA leave."); *Barry v. Wing Mem'l Hosp.*, 142 F. Supp. 2d 161, 165 (D. Mass. 2001) ("[T]he employee must be able to return to [his] prior position before [he] has a right to reinstatement."); 29 C.F.R. § 825.216(c) (an employee has no right to reinstatement "[i]f the

employee is unable to perform an essential function of the position because of . . . the continuation of a serious health condition"). Accordingly, the question presented is whether Plaintiff has "satisfied the statutory requirements to assert [his] right to reinstatement under the FMLA." *Barry*, 142 F. Supp. 2d at 165. *See* 29 U.S.C. § 2614(a)(1).

Plaintiff's interference claim falters because he fails to meet the statutory precondition to reinstatement. He left his job at Defendant's facility on March 17, 2014 (Dkt. No. 41 ¶ 16). The FMLA leave of twelve weeks (84 days) expired on or about June 9, 2014. *See* 29 U.S.C. § 2612(a)(1)(D). However, according to the undisputed facts, Plaintiff's treatment provider indicated that he would not be able to return to work until August 2014 at the earliest, which exceeds the FMLA leave period (Dkt. No. 41 ¶ 40). *See Bellone*, 915 F. Supp. 2d at 193 ("If the employee is medically unable to return to work after the exhaustion of the twelve weeks of leave . . . he or she is no longer entitled to restoration.") (citing *Colburn*, 429 F.3d at 332; *Barry*, 142 F. Supp. 2d at 165).

Accordingly, the court recommends that Defendant's motion for summary judgment as to Count I be granted. [5]

---

[5] Although Plaintiff's complaint does not claim Defendant failed to give him notice as required by the FMLA (Dkt. No. 1-1), Defendant addresses the notice requirements in a footnote (Dkt. No. 40 at 16 n.7). *See Adkins v. Atria Senior Living, Inc.*, 113 F. Supp. 3d 399, 410 (D. Me. 2015) (a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" that is sufficient to "at least 'give the defendant fair notice of what the claim is and the grounds upon which it rests'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations and alteration omitted). "Pursuant to the implementing regulations, employers are required to provide employees with individual notices concerning their FMLA rights at various times." *Bellone*, 915 F. Supp. 2d at 193 (citing 29 C.F.R. § 825.300(b)-(d)). As relevant here, absent extenuating circumstances, an employer must notify an employee of the employee's eligibility to take FMLA leave within five business days of: (1) an employee's request for FMLA leave; or (2) when "the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason." 29 C.F.R. § 825.300(b)(1). Likewise, absent extenuating circumstances, the employer must notify the employee whether the leave will be designated as FMLA leave within five business days of "[w]hen the employer has

C.    Claimed ADA Violation (Count II)

Defendant persuasively argues that the court lacks jurisdiction over Plaintiff's Title I

ADA claim because it is time barred (Dkt. No. 40 at 13-14).  "An . . . (ADA) plaintiff must

comply with the administrative procedures specified in Title VII, 42 U.S.C. § 2000e, before

commencing suit under Title I of the ADA."  *Cheney v. Emmaus, Inc.*, No. Civ.A. 04-11627-

RGS, 2004 WL 2237701, at *1 (D. Mass. Oct. 5, 2004).  *See* 42 U.S.C. § 12117(a) (making the

"powers, remedies, and procedures" of Title VII, 42 U.S.C. § 2000e, applicable to claims under

Title I of the ADA).  "These procedures require the filing of an administrative charge with the

EEOC within 180 days of the alleged act of discrimination."  *Cheney,* 2004 WL 2237701, at *1

(citing 42 U.S.C. 2000e-5(e)(1)).  A plaintiff who initially proceeds at the MCAD, as in the

instant case, has an additional 120 days to file with the EEOC.  *Id*. at *1 n.2.  If the EEOC

dismisses the charge, it is required to notify the plaintiff who then has ninety days "after the

giving of such notice" to bring a civil action.  42 U.S.C. § 2000e-5(f)(1).  "This notification is

_____

enough information to determine whether the leave is being taken for a FMLA qualifying
reason."  29 C.F.R. § 825.300(d)(1).  Additionally, "[e]mployers shall provide written notice
detailing specific expectations and obligations of the employee and explaining any consequences
of a failure to meet these obligations" including "[a]ny requirements for the employee to furnish
certification of a serious health condition, serious injury or illness . . . and the consequences of
failing to do so."  29 C.F.R. § 825.300(c)(1)(i).  "Failure to follow the [regulation's] notice
requirements" may provide a cause of action for interference with FMLA rights.  29 C.F.R. §
825.300(e).  However, recovery for lack of notice is contingent on plaintiff's showing of "some
prejudice."  *Bellone*, 915 F. Supp. 2d at 193 (citing *Dube v. J.P. Morgan Inv'r Servs.*, 201 Fed.
App'x 786, 788 (1st Cir. 2006)).  *See also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81,
89, 91 (2002) (failure to provide notice can only constitute interference if the employee shows
that he was prejudiced by the lack of notice).  Here, even if Plaintiff had alleged lack of notice,
he could not demonstrate prejudice because he was unable to return to work until after the
FMLA leave period expired.  *See Bellone*, 915 F. Supp. 2d at 196 ("[A]n employee is not harmed
by late or inadequate notice when the employee was incapable of returning to work after the
twelve weeks of FMLA leave . . . .").

commonly termed a right-to-sue notice." *Loubriel v. Fondo del Seguro del Estado*, 694 F.3d 139, 142 (1st Cir. 2012). "The 90 day period is jurisdictional and the failure to file within the allotted 90 days is ordinarily fatal." *Cheney*, 2004 WL 2237701, at *1. *See also Loubriel*, 694 F.3d at 142 ("If the claimant does not bring suit within the prescribed 90-day period, the action is time barred.") (citing 42 U.S.C. § 2000e-5(f)(1)); *see also Chico-Vélez v. Roche Prods., Inc.*, 139 F.3d 56, 59 (1st Cir. 1998).

The undisputed facts indicate that Plaintiff's suit was not filed within ninety days of his receipt of the EEOC's right-to-sue notice. The EEOC mailed the notice to Plaintiff on April 3, 2015 (Dkt. No. 41 ¶ 44; Dkt. No. 43-11 at 2). The notice clearly warned that Plaintiff would lose the right to sue for a violation of federal law if a lawsuit based on federal charges was not filed in federal or state court within ninety days of receipt of the notice (*id.*). Although the record is silent regarding the date of Plaintiff's receipt of the notice, "[t]here is a presumption that, in the absence of evidence to the contrary, a notice provided by a government agency is deemed to have been placed in the mail on the date shown on the notice and received within a reasonable time thereafter." *Loubriel*, 694 F.3d at 143 (citing *Me. Med. Ctr. v. United States*, 675 F.3d 110, 114 (1st Cir. 2012)). Courts have construed "a reasonable time" after first-class mailing to be from three to seven days. *Id.* (citing cases). Even generously viewing Plaintiff's date of receipt of the notice as April 10, 2015, seven days from the date of mailing on April 3, 2015, the time to sue expired on or about July 9, 2015 (*id.*). Plaintiff filed suit in state court on September 28, 2015, more than two months beyond the filing deadline. Consequently, the court recommends

that Defendant's motion for summary judgment on the ADA claim (Count II) be allowed for lack of jurisdiction.[6]

    D.    <u>Claimed Chapter 151B Violation (Count III)</u>

Defendant does not dispute that Plaintiff's MCAD claim was timely filed and that his civil action was brought in the Hampden Superior Court within three years of the alleged unlawful practice, as required by the state statute of limitations. *See Windross v. Barton Protective Srvcs., Inc.*, 586 F.3d 98, 102 (1st Cir. 2009) (Massachusetts law requires a claimant to file a charge with the MCAD within 300 days of the alleged discriminatory act and to commence a lawsuit within three years after such act) (citing Mass. Gen. Laws ch. 151B §§ 5, 9). Defendant determined that Plaintiff voluntarily resigned as of May 28, 2014 and so notified him by a May 30, 2014 letter (Dkt. No. 41 ¶¶ 36, 39). Because Plaintiff resigned on May 28, 2014, he had until May 28, 2017 to file a lawsuit alleging a violation of Chapter 151B. He filed the suit in state court in September 2015. Consequently, Plaintiff's state law claim is not time barred. *See* Mass. Gen. Laws ch. 151B, § 9.

The undersigned recognizes that the only remaining count in Plaintiff's complaint is a state law claim over which the court has pendant jurisdiction. "Once a case is properly before a federal district court, however, that court has broad authority to retain jurisdiction over pendant state law claims even if the federal claim[s are] later dismissed." *Delgado v. Pawtucket Police Dep't*, 668 F.3d 42, 48 (1st Cir. 2012). *See Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 256–57 (1st Cir. 1996) ("In a federal-question case, the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction but,

---

[6] Even if Plaintiff's ADA claim was not time barred, which it is, the court recommends granting Defendant summary judgment for the reasons articulated below in the discussion of Plaintiff's Chapter 151B claims.

rather, sets the stage for an exercise of the court's informed discretion.") (citing 28 U.S.C. § 1367(c)(3) (authorizing but not requiring a district court to decline adjudication of lingering state-law claims after it has dismissed "all claims over which it has original jurisdiction")).  "In determining whether to retain jurisdiction on such an occasion, the court must take into account considerations of judicial economy, convenience, fairness to the litigants, and comity."  *Delgado*, 668 F.3d at 48.  The court may, in its discretion, choose to dismiss Plaintiff's Chapter 151B claim without prejudice.  *See Martinez v. Colon*, 54 F.3d 980, 990 (1st Cir. 1995); 28 U.S.C. § 1367(c). Because the court has discretion to hear the claim, however, and because the litigation is at the summary judgment stage and the state statute of limitations will expire shortly -- on or about May 28, 2017 -- the undersigned's analysis of the state law claims and recommended disposition follows.

Plaintiff's Chapter 151B claim focuses on Defendant's alleged discrimination in failing to accommodate his request for an extended leave of absence and, instead, terminating his employment (Dkt. No. 1-1 at 5).  Defendant counters that, when Plaintiff resigned, he was not a "qualified handicapped person," as defined by the statute, who was entitled to a reasonable accommodation (Dkt. No. 40 at 8).  Defendant further maintains that, even if Plaintiff established his status as a qualified handicapped person, he caused the breakdown in the interactive process concerning a reasonable accommodation by withholding medical documentation to support a continued leave of absence, and his (implied) requested leave of an undetermined duration was not a reasonable accommodation (*id.* at 9-13).

Chapter 151B makes it unlawful for an employer "to dismiss from employment . . . or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with

14

reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer's business."  Mass. Gen. Laws ch. 151B, § 4(16). [7]  "A 'qualified handicapped person' is entitled to a 'reasonable accommodation' that will enable him to perform the essential functions of his job, so long as the accommodation does not place an undue burden or hardship on the employer."  *Godfrey v. Globe Newspaper Co.*, 928 N.E.2d 327, 333 (Mass. 2010) (citing *Cox v. New Eng. Tel. & Tel. Co.,* 607 N.E.2d 1035, 1041 n.3 (Mass. 1993); Mass. Gen. Laws ch. 151B, § 4(16)).  Under Chapter 151B, an employer's failure to reasonably accommodate a qualified handicapped person's disability is a form of disability discrimination. *See* Mass. Gen. Laws ch. 151B, § 4(16).  *Compare Rocafort v. I.B.M. Corp.*, 334 F.3d 115, 119 (1st Cir. 2003) ("Under the ADA, 'an employer who knows of a disability yet fails to make reasonable accommodations violates the statute'") (quoting *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir. 1999)).[8]  To survive summary judgment on a claim of discrimination based on a failure to reasonably accommodate under Chapter 151B, Plaintiff must prove that:

> (1) []he is a handicapped person within the meaning of the statute; (2) []he is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the employer knew of [his] disability but did not reasonably accommodate it upon a request.

---

[7] A "handicap" is defined as "(a) a physical or mental impairment which substantially limits one or more life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment . . . ."  Mass. Gen. Laws ch. 151B, § 1(17).

[8] Because "Chapter 151B tracks the ADA in virtually all respects . . . , [state c]ourt[s] look[] to federal case law interpreting the ADA as a guide to . . . interpreting Chapter 151B."  *Smith v. Pub. Schs. of Northborough–Southborough*, 133 F. Supp. 3d 289, 295 (D. Mass. 2015) (citing *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 20 n.5 (1st Cir. 2002); *Everett v. 357 Corp.*, 904 N.E.2d 733, 746 n.20 (Mass. 2009)).

*Henry v. United Bank,* 686 F.3d 50, 59-60 (1st Cir. 2012).  *See Faiola v. APCO Graphics, Inc.,* 629 F.3d 43, 47 (1st Cir. 2010) (reciting the legal standards for a reasonable accommodation claim under the ADA and Chapter 151B).  Defendant does not dispute that Plaintiff was a "handicapped person" for purposes of the first element.  However, Defendant seeks summary judgment with respect to the second and third elements.

> 1. Plaintiff was not a "qualified handicapped person" under Chapter 151B when his employment ended.

Focusing initially on the second element of the Chapter 151B claim, "[t]he term 'qualified handicapped person' means a handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap."  Mass. Gen. Laws ch. 151B, § 1(16).  The critical question in determining whether plaintiff was a "qualified handicapped person" under the statute is "whether, in fact, [he] was able to perform the essential functions of his job with or without reasonable accommodation when he [resigned]."  *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 583-84 (1st Cir. 1992).  According to the uncontested facts, Plaintiff left work on March 17, 2014, did not return, and was unable to work until August 2014 at the earliest (Dkt. No. 41 ¶¶ 10-16, 40; Dkt. No. 43-1 at 4-5).  This evidence demonstrates that, at the relevant time -- when Plaintiff's employment ended on May 28, 2014 -- he was not a "qualified handicapped person" who was "capable of performing the essential functions of . . . [his] job," or "who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap."  Mass. Gen. Laws ch. 151B, §§ 1(16), 4(16).  *See August*, 981 F.2d at 583-84; *Godfrey*, 928 N.E.2d at 337 ("Since at the time his employment was terminated the plaintiff was unable to perform one of the essential duties of [his job], with or without a reasonable accommodation, he was not a qualified handicapped person pursuant to

[Mass. Gen. Laws ch.] 151B, § 4(16), and the [defendant] had no obligation to engage in dialogue concerning a nonexistent possibility of accommodation."); *Scott v. Encore Images, Inc.*, 955 N.E.2d 319, 324 (Mass. App. Ct. 2011) (single disputed issue was whether plaintiff was a "qualified handicapped person" when he was terminated from employment). *Compare Henry,* 686 F.3d at 60 ("[A]s of the date of her termination, the plaintiff could not work in her position at all . . . ."). Because Plaintiff was not capable of performing the essential functions of his job when Defendant terminated his employment, this court recommends that summary judgment be granted.[9] *See Godfrey*, 928 N.E.2d at 337.

> 2.  Defendant made reasonable efforts to engage in the interactive process and to provide Plaintiff with a reasonable accommodation, but Plaintiff was responsible for the breakdown in communication; and Plaintiff's request for an open-ended extension of his leave of absence was not a reasonable accommodation.

Even if Plaintiff is deemed to be a "qualified handicapped person" at the time of his termination, his claim falters. Despite viewing the evidence through the favorable summary judgment lens, the uncontested evidence fails to establish the third element of the analysis: that Defendant "knowingly failed to provide a reasonable accommodation for his disability." *Dickinson v. UMASS Mem'l Med. Grp.*, Civil Action No. 09-40149-FDS, 2011 WL 1155497, at

---

[9] Defendant avers that Plaintiff's complaint does not allege employment discrimination under the ADA or Chapter 151B (Dkt. No. 40 at 2 n.1). Even if Plaintiff raised a discrimination claim under the ADA, it is time barred for the reasons discussed earlier. Moreover, he is unable to demonstrate employment discrimination on the basis of a handicap under Chapter 151B. In order to prove discrimination under Chapter 151B, Plaintiff was required to establish that (1) he had a handicap; (2) he was a "qualified handicapped person" as defined by the statute; and (3) he was subject to an adverse employment action because of his handicap. *See Dartt v. Browning-Ferris Indus., Inc.*, 691 N.E.2d 526, 530 (Mass. 1998); *Whalen v. Nynex Info. Res. Co.*, 647 N.E.2d 716, 719 (Mass. 1995). The first two elements overlap with those of a reasonable accommodation claim. *See Faiola*, 629 F.3d at 47. As shown above, Plaintiff did not meet the definition of a "qualified handicapped person," and even if he did, he was not terminated due to his disability. Instead, Defendant considered him to have voluntarily resigned after he failed to provide medical documentation to substantiate his continued leave of absence.

*10 (D. Mass. Mar. 24, 2011).  Defendant contends that summary judgment should be granted because Plaintiff was responsible for the breakdown in the interactive process used to arrive at a reasonable accommodation and because an open-ended leave of absence, to the extent there was such a request, was not a reasonable accommodation as a matter of law.  Each of Defendant's contentions will be addressed in turn.

> a.  Plaintiff was responsible for the breakdown in the interactive process used to arrive at a reasonable accommodation.

"A reasonable accommodation" is one that "'enable[s] a qualified individual with a disability to perform the essential functions of [his] position.'"  *Ward v. Mass. Health Research Inst., Inc.,* 209 F.3d 29, 36 (1st Cir. 2000) (quoting 29 C.F.R. § 1630.2(o)(1)(ii)).  The employee takes the first step in obtaining a reasonable accommodation by requesting a modification that will enable him to perform his existing duties.  *See Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012) ("The obligation is on the employee to provide sufficient information to put the employer on notice of the need for accommodation.  This means not only notice of a condition, but of a 'causal connection between the major life activity that is limited and the accommodation sought.'") (citations omitted)); *Freadman v. Metro. Prop. and Cas. Ins. Co.*, 484 F.3d 91, 102 (1st Cir. 2007) ("Ordinarily, the employer's duty to accommodate is triggered by a request from the employee."); *Russell v. Cooley Dickinson Hosp., Inc.*, 772 N.E.2d 1054, 1065 (Mass. 2002).  The employee's request "sometimes creates a 'duty on the part of the employer to engage in the interactive process'" of determining an accommodation.  *E.E.O.C. v. Kohl's Dept. Stores, Inc.*, 774 F.3d 127, 132 (1st Cir. 2014) (quoting *Enica v. Principi*, 544 F.3d 328, 338 (1st Cir. 2008)) (footnote omitted).  *See Russell*, 772 N.E.2d at 1065; 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] in need of accommodation.  This

18

process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations."). "The interactive process, which varies depending on the circumstances of each case . . . requires both the employer and employee to engage in a meaningful dialogue, in good faith, for the purpose of discussing alternative reasonable accommodations." *Ortiz-Martínez v. Fresenius Health Partners, P.R., L.L.C.*, No. 16-1453, 2017 WL 1291193, at *4 (1st Cir. Apr. 7, 2017) (citing *Kohl's*, 774 F.3d at 132). *See Aulisio v. Baystate Health Sys., Inc.*, Civil Action No. 11-30027-KPN, 2012 WL 3947738, at *7 (D. Mass. Sept. 7, 2012) ("'[A] reasonable accommodation is a cooperative process in which both the employer and the employee must make reasonable efforts and exercise good faith.'") (quoting *Rennie v. United Parcel Serv.*, 139 F. Supp. 2d 159, 168 (D. Mass. 2001)). "Once 'a breakdown in the process has been identified, "courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary."'" *Ortiz-Martinez,* 2017 WL 1291193, at *4 (quoting *Enica*, 544 F.3d at 339). "If an 'employee fails to cooperate in the process, then the employer cannot be held liable under the ADA for a failure to provide reasonable accommodations.'" *Id.* (quoting *Enica*, 544 F.3d at 339). That occurred here.

The uncontested facts demonstrate that Defendant "continually attempted to engage in the interactive process in good faith, while Plaintiff refused to meaningfully engage," after he submitted some medical documentation to UNUM on May 13, 2014, almost two months after he left the workplace and following UNUM's and Defendant's repeated requests for his medical records to substantiate his need for a leave of absence (Dkt. No. 41 ¶¶ 30, 31). *Id.* at *5. Notwithstanding Plaintiff telling his supervisor that he was "gone" after working part of his shift on March 17, 2014, turning over his badge to a security guard as he left Defendant's facility, and

telling a Mercy employee that he had just quit his job, Defendant agreed to permit him to withdraw his apparent resignation and to accommodate his disability by allowing his request for a short term disability leave of absence (Dkt. No. 41 ¶¶ 11, 12, 15, 17, 18). "[A] medical leave of absence -- [Plaintiff's] proposed accommodation -- is a reasonable accommodation under the [ADA] in some circumstances." *García-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 647 (1st Cir. 2000). Defendant was willing to accommodate Plaintiff's request conditioned on the submission of supporting records. "An employee seeking an accommodation for a disability must comply with an employer's reasonable request for medical documentation." *Gard v. U.S. Dept. of Educ.*, 691 F. Supp. 2d 93, 100 (D.D.C. 2010), *aff'd,* No. 11-5020, 2011 WL 2148585 (D.C. Cir. May 25, 2011). *See* 42 U.S.C. § 12112(d)(4)(A) (inquiries into a disability are appropriate when "job-related and consistent with business necessity"); E.E.O.C. Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA), 2000 WL 33407182, at *2 (July 27, 2000) (employers are permitted to "ask[] an employee to provide medical documentation regarding his/her disability"). *Compare Goodrich v. WellPoint, Inc.,* No. 2:14-cv-00037-JDL, 2015 WL 4647907, at *10 (D. Me. Aug. 5, 2015) ("An employer can demonstrate its good faith effort to determine the appropriate reasonable accommodation 'in a number of ways, such as . . . request[ing] information about the [employee's condition] and what limitations the employee has, . . . [and] show[ing] some sign of having considered the employee's request.'") (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3rd Cir. 1999)). After Plaintiff failed to respond to UNUM's first letter requesting an "Attending Physician's Statement" and authorizations to release information, it sent two additional letters (Dkt. No. 41 ¶¶ 21-24). On May 6, 2014, seven weeks after Plaintiff left his job, Defendant notified Plaintiff that it considered him to have

resigned on that date based on his failures to: comply with UNUM's repeated requests for medical records to substantiate his short term disability benefit application; return to work; and contact Defendant to explain his absence (Dkt. No. 41 ¶¶ 26, 27; Dkt. No. 42-3 at 2). This communication prompted Plaintiff to contact Capannola and to tell her that he would submit the requisite information to UNUM that day (Dkt. No. 41 ¶ 28).

Based upon Plaintiff's representation that he would comply with the records request, Capannola rescinded his resignation and extended his leave of absence (*id.*). But Plaintiff still did not submit the requisite documentation despite Defendant's concession (Dkt. No. 42-4 at 2). Consequently, Defendant's May 12, 2014 letter to Plaintiff indicated that his leave of absence would terminate on May 16, 2014 unless he submitted the supporting records on or before that date (Dkt. No. 41 ¶ 29; Dkt. No. 42-4 at 2).

Plaintiff's submission of his treating therapist's records to UNUM on May 13, 2014 supported UNUM's grant of short term disability benefits to April 15, 2014 (Dkt. No. 41 ¶ 32; Dkt. No. 43-7 at 2). Notwithstanding Plaintiff's knowledge that he was required to submit additional medical documentation to support an extension of his leave of absence and short term disability benefits by May 28, 2014, he failed to comply with Defendant's simple and straightforward request for medical records and his employment was deemed to be voluntarily terminated as of that date (Dkt. No. 41 ¶¶ 35, 36, 37; Dkt. No. 42-5 at 2).

"Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown [in the interactive process]. But where . . . the employer does not obstruct the process, but instead makes reasonable efforts both to communicate with the employee and provide accommodations based on the information it possessed, ADA liability simply does not follow." *Beck v. Univ. of Wis. Bd. of Regents,* 75 F.3d

1131, 1137 (7th Cir. 1996).  *See Phelps v. Optima Health, Inc.,* 251 F.3d 21, 27-28 (1st Cir.

2001) (where plaintiff failed to cooperate or actively engage in the interactive process, employer

could not be held liable for failure to accommodate).  Defendant accommodated Plaintiff's

handicap by rescinding his initial resignation and by permitting him to take a leave of absence,

then by voiding his second resignation and extending his leave.  Plaintiff, knowing the

consequences, was responsible for the breakdown of the interactive process by failing to comply

with Defendant's repeated reasonable requests for medical documentation to support his leave.

*See Delson v. Mineta*, 144 Fed. App'x 136, 137 (2nd Cir. 2005) (unpublished) ("[P]laintiff's

refusal to provide the defendant with any specific medical documentation . . . precipitated the

failure of the 'interactive process' between employer and employee that the ADA envisions.");

*Beck,* 75 F.3d at 1137 (employee's failure to provide her employer with information about her

medical condition relieved her employer of liability for failing to provide a reasonable

accommodation).  *Compare Deighan v. SuperMedia L.L.C.*, C.A. No. 14-264 S, 2016 WL

6988813, at *11 (D.R.I. Nov. 29, 2016) ("[T]here is no liability for an employer that fails to

engage in an interactive process where the employee has failed to provide evidence to the

employer that he or she could perform the essential functions of the job with or without a

reasonable accommodation.").

      Because Defendant was not liable for failing to provide Plaintiff with a reasonable

accommodation, this court recommends that Defendant's motion for summary judgment be

allowed.

                  b.      Defendant was not required to grant Plaintiff a leave of absence for an
                         indefinite period of time.

Defendant alleges that even if Plaintiff had engaged in the interactive process, Plaintiff's apparent request for an open-ended leave of absence beyond April 15, 2014 was not a reasonable accommodation (Dkt. No. 40 at 12-13). Defendant's argument is convincing.

"In addition to making a sufficient request [for an accommodation] concerning a known limitation, the plaintiff must also show that the proposed accommodation is reasonable — that it 'would enable [him] to perform the essential functions of [his] job,' and that 'at least on the face of things, it is feasible for the employer under the circumstances.'" *Freadman*, 484 F.3d at 103 (quoting *Reed v. LePage Bakeries, Inc.,* 244 F.3d 254, 259 (1st Cir. 2001)); *see also U.S. Airways, Inc. v. Barnett,* 535 U.S. 391, 401–02 (2002); *Mulloy v. Acushnet Co.,* 460 F.3d 141, 148 (1st Cir. 2006). If the plaintiff makes these showings, the burden then shifts to the defendant to demonstrate that "the proposed accommodation would impose an undue hardship." *Freadman*, 484 F.3d at 103. *See Reed*, 244 F.3d at 259; *Godfrey*, 928 N.E.2d at 333; *see also Barnett*, 535 U.S. at 402.

Although "[a] leave of absence and leave extensions are reasonable accommodations in some circumstances[, w]hether the leave request is reasonable turns on the facts of the case." *Criado v. I.B.M. Corp.*, 145 F.3d 437, 443 (1st Cir. 1998) (citations omitted). Certain leaves "are not reasonable as a matter of law." *Carleton v. Commonwealth,* 858 N.E.2d 258, 271 n.27 (Mass. 2006) (citing *Russell*, 772 N.E.2d at 1064). The operative question in analyzing if an employee's requested leave or leave extension is a "reasonable accommodation" is whether it is one "'which presently, or *in the immediate future*, enables the employee to perform the essential functions of the job.'" *Russell*, 772 N.E.2d at 1064 (quoting *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995)) (emphasis added). "[A]ttendance has been recognized as an essential function of the job." *Echevarria v. AstraZeneca, LP*, 133 F. Supp. 3d 372, 398 (D.P.R. 2015) (citing cases).

"With respect to extended medical leave, the Supreme Judicial Court of Massachusetts has held that '[a] request for a limited extension, setting a more definite time for the employee's return to work, may . . . constitute a reasonable accommodation . . . based on the circumstances.'" *Henry*, 686 F.3d at 60 (quoting *Russell,* 772 N.E.2d at 1064). "It also has held, however, that '[a]n open-ended or indefinite leave extension' does not constitute a reasonable accommodation under Chapter 151B." *Id.* (quoting *Russell*, 772 N.E.2d at 1064). *See García–Ayala,* 212 F.3d at 65 (factors to consider in ADA claim "as to whether requests for leaves of absence are unreasonable include" whether employee gave "indication as to when she might be able to return"); *Cairo v. Starbucks Corp.*, Civil Action No. 11-11750-DJC, 2013 WL 5229968, at *11 (D. Mass. Sept. 13, 2013) ("In the context of a request for a leave of absence, one factor to consider is whether the employee specified a return date or simply sought '"an open ended or indefinite leave extension."'") (quoting *Henry*, 686 F.3d at 60). *Compare Echevarria v. AstraZeneca L.P.*, 133 F. Supp. 3d 372, 398 (D.P.R. 2015) ("An allowance of leave for medical care or treatment may constitute a legitimate accommodation in appropriate circumstances. As with any accommodation, it must be reasonable. And to be reasonable, it must likely enable the employee to return to work in the near future.") (citation omitted). "Here, the record does not give rise to a jury question on whether [Plaintiff's] apparent request for extended leave constitutes a reasonable accommodation." *Henry,* 686 F.3d at 60.

The same evidence that demonstrates Plaintiff's responsibility for the breakdown in the interactive process supports Defendant's assertion that to the extent Plaintiff requested additional time away from work, his request was for an indefinite leave of absence. On May 22, 2014, after Plaintiff finally provided UNUM with medical records verifying his short term disability benefits claim, UNUM approved Plaintiff's benefits from April 5 to April 15, 2014 (Dkt. No. 41 ¶¶ 18,

30, 31, 32, 35; Dkt. No. 43-7 at 2).  Defendant agreed to extend Plaintiff's leave of absence from April 15 to May 22, 2014 contingent on him providing medical documentation to UNUM by May 28, 2014 demonstrating his need for the additional leave (Dkt. No. 41 ¶¶ 33-37; Dkt. No. 42-5 at 2).  Around this time, Plaintiff's treatment provider apparently notified Defendant that Plaintiff would be capable of returning to work at the earliest in August 2014 (Dkt. No. 41 ¶ 40; Dkt. No. 43-8 at 4 ¶ 7; Dkt. No. 43-9 at 5 ¶ 8).  However, Plaintiff's treatment provider did not set August 2014 as Plaintiff's definite return date (*id.*).  Plaintiff failed to provide additional documentation to apprise Defendant of his current condition and to support the extension of his short term disability leave (Dkt. No. 41 ¶ 38).  Consequently, by deeming Plaintiff to have voluntarily resigned on May 28, 2014, Defendant, in effect, extended his leave of absence for about six weeks beyond April 15, but denied a further extension (Dkt. No. 41 ¶¶ 36, 37, 38, 39; Dkt. No. 42-5 at 2).

Because Plaintiff failed to comply with Defendant's request for up-to-date medical documentation substantiating his current inability to work and indicating that he would be capable of returning to work in August 2014, Defendant was not required to accommodate Plaintiff's disability by granting what amounted to an open-ended leave.  "Such an open-ended request for additional leave is just the type of wait-and-see approach that has been rejected as giving rise to a triable issue on reasonable accommodation."  *Henry*, 686 F.3d at 61.  *See Reifer v. Colonial Intermediate Unit 20*, 462 F. Supp. 2d 621, 636 (M.D. Pa. 2006) ("It is utterly unreasonable and not within the mandate of the ADA to expect an employer to accommodate an employee with an indefinite leave of absence.").  *Compare Watkins v. J. & S. Oil Co., Inc.,* 164 F.3d 55, 61-62 (1st Cir. 1998) (granting summary judgment for employer because employee could not advise employer with "sufficient specificity" that he would be able to return to his job

in the "'immediate future'"); *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1226 (11th Cir. 1997) (allowing summary judgment where employee asked employer for two additional months of leave, but could not show that he would likely be able to work "within a month or two"); *Russell*, 772 N.E.2d at 1065 (allowing employer's motion for summary judgment on the reasonable accommodation claim because "plaintiff did not indicate when (if ever) she would be able to return to her position"); *Scott*, 955 N.E.2d at 325 (employer was not required to provide an indefinite leave of absence to accommodate plaintiff's handicap); *Dziamba v. Warner & Stackpole L.L.P.*, 778 N.E.2d 927, 934 (Mass. App. Ct. 2002) ("Nor does reasonable accommodation require an employer to wait an indefinite period for the recovery of an employee who has a medical condition that bears on job performance.").  *Contrast García-Ayala*, 212 F.3d at 648 (employee's reasonable accommodation claim survived summary judgment where she specified the date on which she would return to her job, her doctor cleared her to return several weeks thereafter, and her employer did not demonstrate that the extension of her leave created an undue hardship); *Criado*, 145 F.3d at 444-45 ("Allowing a disabled employee a one-month leave of absence does not absolve an employer's duty to accommodate, especially where the extra leave requested is not expected to be prolonged or perpetual" based on the employee's physician's assessment); *Ralph v. Lucent Tech., Inc.*, 135 F.3d 166, 172 (1st Cir. 1998) ("The very limited four-week accommodation . . . [was] eminently reasonable.").[10]

In summary, Plaintiff does not succeed in establishing that he was denied a reasonable accommodation for three reasons:  (1) he was not a "qualified handicapped person" when he

---

[10] Because the extension of Plaintiff's leave was not a reasonable accommodation, Defendant was not required to demonstrate that Plaintiff's request imposed an undue burden on its business. *See Henry*, 686 F.3d at 61; *Godfrey*, 928 N.E.2d at 333-34, 337.

voluntarily resigned his position; (2) he was responsible for the breakdown of the interactive process by failing to provide medical documentation to substantiate his need for a leave of absence; and (3) an extension of his leave of absence for an indefinite period was not a request for a reasonable accommodation. Accordingly, the court recommends that Defendant's motion for summary judgment be granted on Plaintiff's Chapter 151B claims (Count III).

IV.    CONCLUSION

For the above-stated reasons, the undersigned recommends that Defendant's motion for summary judgment (Dkt. No. 39) be granted as to all counts of Plaintiff's complaint.[11]

Dated:  April 25, 2017                          /s/ Katherine A. Robertson
                                                KATHERINE A. ROBERTSON
                                                UNITED STATES MAGISTRATE JUDGE

---

[11] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.